IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JONATHAN MARGOLES,** | : | |
| Plaintiff, | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 22-4257** |
| | : | |
| **FORMER SUPERINTENDENT** | : | |
| **JAMIE SORBER et al.,** | : | |
| Defendants. | : | |

**McHUGH, J.**                                                                                                   **July 5, 2023**

**MEMORANDUM**

This is a civil rights action brought by an incarcerated person who alleges that prison officials failed to protect him from a cellmate with a known history of violence. Plaintiff Jonathan Margoles suffered serious injuries because of the assault, but failed to file a grievance until months later, leading the prison officials he has sued to argue that Plaintiff's claim is barred for failure to exhaust administrative remedies. Having converted the pending motions to dismiss to motions for summary judgment, and having reviewed the factual record, I am constrained to agree with Defendants and enter judgment in their favor.

**I.    Relevant Background**

Plaintiff Jonathan Margoles is a 68-year-old man serving a life sentence, who has been incarcerated at the State Correctional Institution at Phoenix ("SCI Phoenix") since 2018. Am. Compl. ¶¶ 6, 15, ECF 7. At some point after 2018, Plaintiff was celled with Shane Wagner, an inmate whom Plaintiff alleges had a known history of assaulting other individuals in Pennsylvania prisons. *Id.* ¶ 21. Plaintiff asserts that several named Defendants were involved in cell assignment decisions at SCI Phoenix. *Id.* ¶ 26.

On the evening of January 29, 2021, Plaintiff and Wagner were in their cell reading and watching television, respectively. *Id.* ¶ 27. Wagner became agitated that Plaintiff had the light on and told Plaintiff to turn off the light. *Id.* ¶ 28. When Plaintiff failed to immediately comply with Wagner's request, Wagner jumped off the top bunk bed and punched Plaintiff numerous times in the head and eye. *Id*. ¶ 29. Plaintiff alleges that staff failed to respond after he triggered the call button in his cell, and that corrections officers only came to his cell after Plaintiff banged on the cell door and placed blood from his injury on the cell window to draw the officers' attention. *Id.* ¶¶ 30-31.

After staff responded and treated injuries to his left eye and the surrounding area, Plaintiff was transferred to Einstein Medical Center Montgomery for additional medical care, and due to the severity of his eye injury was later transferred to Wills Eye Hospital. *Id.* ¶¶ 33-35. Plaintiff asserts that his injuries from the assault included fractures to his left orbital socket and orbital floor, a torn retina of his left eye, and post-traumatic stress. *Id*. ¶¶ 2, 34, 36.

Shortly after the assault, on February 3, 2021, Plaintiff mailed Defendant Jamie Sorber – the superintendent at SCI Phoenix at the time – a two-page handwritten letter regarding the assault. Pl.'s Ex. 1 at 1-2, ECF 18-2 at 1-2. Plaintiff's letter recounted Wagner assaulting him and asked Sorber to place Plaintiff in a different unit to protect him from additional attacks. *Id*. at 1. The letter was received by Sorber's office on February 4, 2021, and Defendant Gina Clark – a former officer at SCI Phoenix who reviewed the letter – made a notation on the letter that she would inquire about moving Plaintiff to a different unit. *Id.* at 2. Between March 2021 and August 2021, Margoles also submitted at least four handwritten grievances regarding a lack of air-conditioning in his unit, not receiving a kosher meal, and various medical needs. *See* ECF 9-2 at 13-22.

2

On August 29, 2021, seven months after the assault, Plaintiff finally filed a formal grievance. Pl.'s Ex. 3 at 1, ECF 18-2 at 7. In his grievance, Plaintiff asserted that his placement in a cell with Wagner constituted wanton indifference, gross negligence, and disregard for his physical safety, and requested single cell status and monetary compensation for the harm he suffered. *Id.* The grievance was rejected as untimely, because the prison's grievance procedure requires grievances to be filed within fifteen days of an incident. Pl.'s Ex. 4 at 1, ECF 18-2 at 8. Plaintiff thereafter appealed to Defendant Sorber, in Sorber's role as Facility Manager, and Sorber upheld the initial response. Pl.'s Ex. 6 at 1, ECF 18-2 at 10. Plaintiff appealed this determination to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), the final level of appeal, which found that Plaintiff's initial grievance was properly rejected as untimely. Pl.'s Ex. 8 at 1, ECF 18-2 at 13.

This suit alleging deliberate indifference followed, and Defendants have moved to dismiss solely on the basis that Plaintiff failed to properly exhaust administrative remedies.[1]

## II. Legal Standard

Motions to dismiss are typically governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). But pursuant to *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018), I gave notice to the parties that I would consider exhaustion in my role as fact finder and converted the motion to dismiss into a motion for summary judgment on the limited grounds of whether Plaintiff exhausted his administrative remedies. ECF

---

[1] Defendants Sorber, Clark, and Luquis jointly filed a motion to dismiss, ECF 9, and Defendants Mascellino and Joseph Terra later filed a second motion to dismiss. ECF 17. The content of each motion is nearly identical, and all Defendants move for dismissal or summary judgment on exhaustion grounds. Furthermore, all parties agree that Defendant Robert Terra should be dismissed from this case due to his death after the filing of the Amended Complaint.

3

19. The standard for summary judgment is governed by Fed. R. Civ. P. 56(a), as amplified by *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**III.     Discussion**

Defendants argue that because Plaintiff filed an untimely grievance, he failed to exhaust his claims and his action should therefore be dismissed.

The Prison Litigation Reform Act of 1995 ("PLRA") prevents incarcerated persons from filing federal lawsuits regarding prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007). Proper exhaustion requires such an individual to "complete the administrative review process" in compliance with all applicable procedural rules prior to filing suit, including compliance with any grievance deadlines. *See Woodford*, 548 U.S. at 83-84, 88 (holding that an incarcerated individual cannot satisfy the PLRA's exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal). Exhaustion is mandatory under the PLRA, *Ross v. Blake*, 578 U.S. 632, 638 (2016), and applies to any suits about prison life, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is ultimately "a non-jurisdictional prerequisite" to an incarcerated individual bringing suit, and "constitutes a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time." *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (citation and internal quotation omitted); *see also Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013) (holding that "exhaustion constitutes a preliminary issue for which no right to a jury trial exists").

While exhaustion is mandatory, prisoners need only exhaust "available" remedies. Administrative remedies are "unavailable" in three circumstances: (1) when the administrative process operates as a simple dead end, (2) when it is "so opaque that it becomes, practically speaking, incapable of use," or (3) when prison administrators thwart individuals from using the grievance process "through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44. This third category includes any attempt by a prison official to inhibit use of the grievance process "through serious threats of retaliation and bodily harm." *Rinaldi*, 904 F.3d at 267.

Plaintiff acknowledges that his grievance was untimely but argues that this should not bar his claims because administrative remedies were not "available" to him. He asserts that the grievance process was unavailable because (1) he had a serious physical injury that prevented him from filing a grievance, (2) he feared retaliation for reporting the guards' failure to prevent his assault, as evidenced by his filing of other grievances for more minor topics after the incident, and (3) he was unaware that he could file a grievance over his cell assignment.[2] None of these arguments are sufficient to preclude summary judgment.

As to the impact of Mr. Margoles' physical injuries on his ability to file a timely grievance, three circuits have held that where a prisoner is injured or undergoing significant medical treatment and it presents an obstacle to filing a grievance, administrative remedies are unavailable. *See, e.g.*, *Rucker v. Giffen,* 997 F.3d 88, 94 (2d Cir. 2021); *Hurst v. Hantke,* 634 F.3d 409, 411-12 (7th Cir. 2011); *Days v. Johnson,* 322 F.3d 863, 867-68 (5th Cir. 2003), *overruled on other grounds by*

---

[2] Plaintiff has not argued that his letter to Superintendent Sorber constituted compliance with the prison's grievance procedure.

5

*Jones v. Bock,* 549 U.S. 199, 216 (2007). But the record here does not support a conclusion that Margoles' injuries impeded his ability to file a grievance. To the contrary, just five days after the incident, Margoles handwrote a letter to Defendant Sorber asking to be placed in a safer cell. *See* ECF 18-2 at 1-2. Although Mr. Margoles represents that this letter was written "with great mental and physical difficulty," the fact remains that he was able to write it and would therefore have been equally capable of preparing a grievance form. And even if one assumes that writing the letter seeking protection exhausted him, that does not explain a delay of seven months, when during the interim period he filed at least four handwritten grievances regarding unrelated issues. *See* ECF 9-2 at 13-22. Whatever impairment followed from the assault resolved to the point where Plaintiff had no difficulty repeatedly invoking the grievance process, without grieving the assault. Given that continued delay, Mr. Margoles cannot demonstrate that his injuries were so severe that "grievance procedures were 'incapable of use,'" and this argument is insufficient to excuse his failure to exhaust over such a prolonged period of time. *See Rucker*, 997 F.3d at 94 (quoting *Ross*, 578 U.S. at 643).

       Plaintiff's second argument, that he did not file a timely grievance because he feared retaliation for complaining about the assault, is similarly unpersuasive. To demonstrate that administrative remedies were unavailable due to threats from prison officials, Margoles must show (1) that the threat was so serious that it would objectively deter a reasonable incarcerated person of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually deterred him. *Rinaldi*, 904 F.3d at 269. Here, Margoles' entire argument is based on a conclusory statement in his declaration he was "fearful of retaliation . . . from everyone around me at SCI Phoenix." Pl.'s Ex. 2 at ¶ 5, ECF 18-2 at 4. But such generalized fear of retaliation is insufficient to render administrative remedies unavailable and falls far short of the evidence that was persuasive to the

Court of Appeals in *Rinaldi*. There, the plaintiff alleged that a prison official "had previously warned Rinaldi that unless he stopped filing requests, she would have him moved to a different unit" and would place him with an individual "who was known for assaulting his cellmates." *Rinaldi*, 904 F.3d at 262. The plaintiff further alleged that officials followed through on this threat, and that the officer who transferred him to a new cell "told Rinaldi that the reason he was being moved was because he 'didn't listen' to those warnings." *Id.* Given that record, the Circuit stated that Rinaldi "unquestionably" satisfied the first prong of the test by introducing facts that would objectively deter the average individual from making a grievance and remanded the case to the district court for further factual inquiry into whether Rinaldi was subjectively deterred by the threats.

In contrast, Mr. Margoles presents no specific facts, let alone facts that might establish that a reasonable person of ordinary firmness in his situation would have feared retaliation for filing a grievance about his cell placement. Nor does he allege that his letter to Sorber resulted in any negative consequences for him, and in fact the notation made on the letter by Defendant Clark – that inquiries would be made about moving him – was constructive.[3]

Mr. Margoles finally argues that his failure to properly exhaust should be excused because he was unaware that he could grieve his housing assignment and complain about officials' failure to protect him from an allegedly dangerous cellmate. Precedent clearly establishes that an individual's failure to exhaust may be excused where prison officials deliberately act to withhold

---

[3] In considering this specific argument, I place no weight on the other grievances Plaintiff filed, mindful of *Rinaldi's* caution that an individual's "willingness to file grievances concerning unrelated and far less inflammatory subjects" does not preclude finding that a grievance on a more serious subject may subject an individual to retaliation. 904 F.3d at 270.

information about the grievance process. *See Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir. 2003) (holding that exhaustion may be excused if prison officials take affirmative steps to prevent use of grievance procedure); *Albino v. Baca*, 747 F.3d 1162, 1176-77 (9th Cir. 2014) (same). But an individual's "claim that the grievance system was unavailable to him because he lacked full knowledge of the specifics of the grievance process does not excuse or waive a failure to exhaust administrative remedies." *Graham v. County of Gloucester*, 668 F. Supp. 2d 734, 741 (E.D. Va. 2009) (citing authority from the Third, Sixth, Seventh, Eighth, and Tenth Circuits), *aff'd*, 413 F. App'x 660 (4th Cir. 2011); *see also Chelette v. Harris,* 229 F.3d 684, 688 (8th Cir. 2000) (emphasizing that the PLRA "says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available"). Mr. Margoles summarily asserts that he did not realize that he could file grievances about his housing situation. *See* Pl.'s Ex. 9 at ¶¶ 20-21, ECF 21-1 at 16-17.

But such a contention must be evaluated against the backdrop of the process itself and how it is presented to individuals in Pennsylvania state prisons. The Department of Corrections Policy Statement creating the grievance system, DC-ADM 804,[4] states: "It is the policy of the Department that every individual committed to its custody shall have access to a formal procedure through which to seek resolution of problems or other issues of concern arising during the course of confinement. For every such issue, there shall be a forum for review and two avenues of appeal." In the subsections describing the grievance process itself the Policy Statement provides that: "The Inmate Grievance System is intended to deal with a wide range of issues, procedures, or events

---

[4] Inmate Grievance System, DC-ADM 804,
https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf

that may be of concern to an inmate." Given the breadth of this description, and Mr. Margoles' resort to the grievance process for a variety of other complaints within the same timeframe, a general claim of ignorance cannot suffice to excuse failure to exhaust.

## IV.     Conclusion

For the reasons set forth above, Defendants' Motions must be granted. An appropriate order follows.

  /s/ Gerald Austin McHugh  
United States District Judge
